**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELLIOT SIEGAL,<br><br>                                              Plaintiff,<br><br>—against—<br><br>YAAKOV MILSTEIN, AVROHOM Y. SOROTZKIN and J. SYNERGY GREEN, INC.,<br><br>                                              Defendants. | Case No: 2:21-cv-04032-JS-SIL<br><br>**ATTORNEY DECLARATION IN SUPPORT** |

T. Bryce Jones, ESQ., an attorney duly admitted to practice law before this Court, hereby declares the truth of the following upon information and belief pursuant to the penalty of perjury:

1. I am the attorney for defendants and as such, I am familiar with the material facts relative to this motion. I submit this affirmation in support of Defendant's motion to compel arbitration pursuant to 9 USC § 4, or in the alternative to dismiss the complaint pursuant to FRCP § 12 (b)(1) for lack of subject matter as this matter is required to be resolved via arbitration and not within the court system.

2. Plaintiff initially filed the Complaint in this action with the Supreme Court of New York State, County of Nassau under index number 607384/2021 on June 11, 2021. The Complaint alleged violations of the Fair Labor Standard Act and New York Labor Law. As the Complaint involved issues of federal law, Defendants had the case removed to this Court on July 17, 2021.

3. Defendants' counsel was hired just before the deadline to remove would have lapsed and thus had not had a chance to fully review the issue of arbitrability or the extensive evidence supporting an agreement to arbitrate. Nevertheless, the Defendants' Answer did assert an agreement to arbitrate as an affirmative defense.

4. Defendants now seek to compel arbitration and stay or dismiss this action as the parties had agreed to arbitrate this matter and their agreement to do so divests this Court of its powers to decide the matters in the Complaint.

5. Before this matter ended up in court, the parties had an agreement for this dispute to be settled before a religious arbitration tribunal called a "Beis Din" (aka "Beit Din"). As discussed more fully in the accompanying memorandum of law, written agreements to arbitrate are governed by the Federal Arbitration Act (hereinafter referred to as the "FAA") and also under NYS CPLR § 7501. These two areas of law form the basis for how arbitration agreements are to be enforced by this Court.

6. In support of Defendants' assertion that this matter was agreed to be decided by arbitration, Defendants submit the arbitration agreement in both the English form and the form in Hebrew. A copy of these documents is attached as Exhibit "A". This document clearly spells out the terms and conditions of the arbitration agreement. Although the documents are not signed, they are a

writing that definitively shows the particulars of the arbitration agreement and what the parties agreed to; and that the intent to arbitrate is unequivocal. See Memorandum of Law at 6. Although the agreement to arbitrate must be in writing, it need not be signed. Id at 7.

7. The parties' intent to be bound by the arbitration agreement in this case is not only found in the arbitration documents but through emails between the parties and the arbitration rabbi, copies of which are attached as Exhibit "B" and text messages between the parties attached as Exhibit "C". From these e-mails and text messages it is quite evident that the parties agreed to arbitrate this matter.

8. The emails between Plaintiff, the Defendants and Rabbi Housman clearly show an intent to arbitrate this matter before a religious arbitration board and not a civil court of law. Plaintiff never objects to the concept of arbitration and, according to his emails and those from the Rabbi referencing him, he wants arbitration to resolve this matter. He in fact participates in the arbitration process itself in at least two significant ways: first, by causing the Beis Din to issue a summons and complaint to defendants (a copy of the Beis Din Summons and Complaint is attached as "Exhibit D"), and second, by striking two proposed members for the arbitration panel See Exhibit "B".

9. There is ample evidence that the parties wished to arbitrate this agreement.

There are written documents outlining the arbitration process. Plaintiff, Defendants, and the Rabbi involved in the arbitration matter exchange emails definitively showing that an arbitration process had been agreed upon. Text messages showing that the process of arbitration was moving forward were also exchanged with Plaintiff, who at no time ever objects to the notion that an arbitration process has been agreed upon. Plaintiff never objects during these texts but suggests times to meet with the Rabbi – "I spoke with the 'Rav' who is available tomorrow between 1-3 pm….", See Exhibit "C". Plaintiff cannot escape this fact and is bound by the contract, whose terms are clear, unmistakable, and agreed upon.

10. By discussing and agreeing to arbitration in these messages along with discussing potential arbiters, and most importantly, never objecting to arbitration, the parties have made their consent to the process known and cannot now deny that there was an arbitration agreement in place. <u>See</u> Memorandum of Law at 7. As there is sufficient evidence in place to show a written arbitration agreement, this Court should enforce the agreement and stay or dismiss this action pending the outcome of arbitration. Arbitration was the parties' intent and the parties' intent to arbitrate must be upheld.

11. Although the Federal Arbitration Act requires arbitration agreements to be in writing to be enforceable, NY state law does not. It recognizes "common law"

arbitration agreements. Id at 8.  If this Court is not satisfied with the written documentation for an arbitration agreement, it can find an oral agreement was formed under New York State law and dismiss this action for lack of subject matter jurisdiction under FRCP § 12 (b) (1). Id.

12. The parties had a verbal agreement to arbitrate evidenced by emails and text messages clearly showing that an arbitration process was agreed upon and in fact had moved into implementation stages. The arbitration process proceeded to the point that arbitrators' names were being discussed for the panel along with a summons and complaint in Plaintiff's name was issued for the arbitration hearing. These actions do not occur unless there has been an agreement to arbitrate. If the documentation in place is insufficient to establish a written arbitration agreement to satisfy the FAA or NYS CPLR, then surely looking at this evidence *in toto*, an arbitration agreement was formed under New York State common law doctrine. The filing of this civil action violates the contract to arbitrate, and this action must be dismissed pursuant to FRCP § 12 (b) (1) as the arbitration agreement deprives this Court of subject matter jurisdiction.

13. Plaintiff filed a civil court action to resolve this dispute knowing full well that he had already agreed to resolve this matter via arbitration through "Beis Din". This duplicitous conduct should not be rewarded. The parties agreed to

arbitrate, either in writing or verbally, and their contract to arbitrate should be respected by this Court. This case should either be dismissed or stayed pending the outcome of the arbitration proceeding. Decisions to arbitrate should not be disregarded by the Courts. The parties in providing for any eventuality in their business relationship desired for any disputes to be settled by arbitration and this Court should not interfere with that contractual desire.

Wherefore, your declarant respectfully requests that the relief requested herein be granted in its entirety in addition to such other and further relief that the Court may deem just, proper, and equitable.

Dated:    New York, New York
          September 16, 2021

/s/ Bryce Jones
T. Bryce Jones