UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ELLIOT SIEGAL,

   Plaintiff,

    -- against--

YAAKOV MILSTEIN, AVROHOM Y.
SOROTZKIN and J. SYNERGY GREEN, INC.,

Defendants.
------------------------------------------------------------X

No. 21 Civ. 04032 (JS)(SIL)

**DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

Defendants respectfully submit this Reply Memorandum of Law in Support of their Motion to Compel Arbitration (ECF No. 7) and in reply to Plaintiff's opposition.

I.     **BACKGROUND ON DISPUTE RESOLUTION UNDER HALACHA**

The individual defendants in this case, Yaakov Milstein and Avrohom Y. Sorotzin, practice Orthodox Judaism. The collective body of Jewish religious laws that govern their life (*Halacha*) forbids Jewish people from having financial disputes with other Jewish people resolved by a non-Jewish court (*Nochri* court). *See* Charles B. Wagner, Gregory M. Sidlofsky and Rachael Kwan, *Advising the Orthodox Jewish Litigant*, 46 The Advocates' Quarterly 135 (2016).[1] "It is a fundamental belief of Orthodox Judaism that G-d gave the Jewish people the Torah at Mount Sinai and that those holy laws govern every aspect of a Jew's life, including the adjudicating of disputes." *Id.* at 142. "To adherents of that belief, litigating in the civil court system constitutes a rejection of Torah law. Jewish law mandates that disputes between Jews are to be resolved through the Beis Din." *Id.*

For this reason, Defendants agreed with the plaintiff to have their dispute resolved according to *Halacha* under "Beis Din," a common and often-used dispute resolution for individuals practicing Judaism.[2] "The term Beis Din means 'house of judgment' and refers to a rabbinical court of justice that adjudicates disputes according to the principles set out in the Torah and the Talmud." *Id.*

---

[1] Available at https://www.wagnersidlofsky.com/wp-content/uploads/advising-orthodox-jewish-litigant.pdf

[2] Beis Din is also spelled "Bais Din," "Beit Din," "Beth Din," or "Bet Din" depending on one's custom and background.

1

Courts have repeatedly held that parties do **not** need to pick a specific, available arbitral forum for an agreement to arbitrate to be enforceable. *See, e.g.*, *Khan v. Dell Inc.*, 669 F.3d 350, 354 (3d Cir. 2012); *Green v. U.S. Cash Advance Ill.*, LLC, 724 F.3d 787 (7th Cir. 2013).[3] Under federal law, this is true because a court may appoint an arbitrator "if a method [for arbitration] be provided and any party thereto shall fail to avail himself of such method." 9 U.S.C. § 5.

An agreement to arbitrate is enforceable so long as one party cannot simply select an arbitral forum with unfettered discretion.[4] *See Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1165 (N.D. Cal. 2012) (finding an agreement that allows the claimant to select from two arbitration associations was enforceable); *Swallow v. Toll Bros., Inc.*, 2008 WL 4164773, at *5 (N.D. Cal. Sept. 8, 2008) (concluding that a provision allowing the drafting party to select either a "successor" of the American Arbitration Association **or** a "similar" association was enforceable); *Cronin v. Citifinancial Servs., Inc.*, 2008 WL 2944869, at *5 (E.D. Pa. July 25, 2008) (enforcing provision requiring either the NAF or AAA to serve as the applicable arbitration association).

When Jewish parties agree to resolve a dispute through beis din, <u>they have agreed to a method</u> for selecting the arbitration panel. It is understood in the community that *Halacha* provides a widely-recognized, specific and uniform procedure for selecting the specific arbitrators to resolve the dispute. To the extent that there remains a material issue of fact of whether there is a procedure

---

[3] This is a far cry from when parties pick one forum to resolve a dispute and specify <u>only</u> that forum is to be used. Although relied upon by the Plaintiff, the Second Circuit's decision in *In re Salomon Inc. Shareholders' Derivative Litig.*, 68 F.3d 554 (2d Cir. 1995) is easily distinguishable because in that case the arbitration agreement stated that all disputes were to be arbitrated by the NYSE and "only the NYSE." *Id.* at 557. "When the NYSE so refuses, there is no further promise to arbitrate in another forum." *Id.* Here, the parties agreed to have the arbitrators selected by the Beis Din process -- this is the method by which they will select an arbitration panel.

[4] Given this case law, it is ironic that Plaintiff's position boils down to his desire to pick the arbitration forum with unfettered discretion.

for selecting arbitrators under *Halacha*, Defendants respectfully request an evidentiary hearing on this issue so that this Court may examine the totality of the circumstances including the presentation of an expert witness before having the Defendants proceed before a secular court.

*First*, the plaintiff selects the institution -- a beis din -- in which to initiate the process. There are dozens of batei din (plural of beis din) across the United States and world.[5] From a secular perspective, a beis din is a "sitting" organization akin to the London Court of International Arbitration or Vienna International Arbitral Centre (if all secular institutions abided by *Halacha*). A "sitting" beis din is known as "*Beis Din Kavua*" under which three arbitrators are typically selected. Arbitrators are known as *dayanim*, meaning "deciders," where a *dayan* refers to a single arbitrator. Plaintiff then obtains a *Hazmana*, which is the equivalent of a summons in federal court, and this is issued to the defendants.

Allowing the plaintiff to select the forum can raise fundamental perceptions of unfairness particularly in the religious context. For example, a person who is not Lubavitch might object to the jurisdiction of a Chabad Beit Din. "It is reasonable to say that the Chabad Dayanim will be more sympathetic towards Lubavitch-affiliated individuals than towards one who is not affiliated with Chabad." Rabbi Chaim Jachter, *Hazmana to Beit Din - Part II*, Torah Academy of Bergen County (1998) ("Jachter, *Hazmana to Beit Din*").[6]

To ensure the perception of fairness, and fairness in fact, *Halacha* allows the defendants to object to a Beis Din selected by the plaintiff and select a new one so long as it is not done to intentionally delay the case. If, in turn, the Plaintiff objects to the defendant's selection of the Beis

---

[5] For an informal international list of Betei Din, see
https://kosherdelight.com/International_Directory_of_Rabbinical_Courts.shtml

[6] Available at https://www.koltorah.org/halachah/hazmana-to-beit-din-part-ii-by-rabbi-howard-jachter.

Din, then the process proceeds to *Zabla Beis Din*. *See* Rabbi Yona Reiss, "Jewish Law, Civil Procedure: A Comparative Study" Journal of the Beth Din of America 1, 18 – 19 (2012).[7]

In *Zabla*, each litigant selects one *dayan*.[8] These two *dayan* together choose the third *dayan*, typically referred to as the *shalish* (literally, "third"), to complete the panel. "In one sense, a [Zabla Beit Din] is not so different from a standard model of arbitration routinely employed by the American Arbitration Association, whereby parties agree that each party will select a preferred arbitrator (either from a pool of arbitrators of a particular arbitral organization or otherwise), and then have the two selected arbitrators choose a third impartial arbitrator to round out the panel." Rabbi Yona Reiss, *Zabla Panels and Courts*, Beth Din of America (Dec. 24, 2020).[9]

## II.   THE PARTIES AGREED TO ARBITRATE ACCORDING TO JEWISH LAW

The evidence before this Court clearly demonstrates Plaintiff agreed to have his dispute with Defendants resolved according to Jewish Law (*Halacha)* using beis din. An agreement to proceed before a Beis Din is treated as an agreement to arbitrate. *See Matter of Spilman v. Spilman*, 273 A.D.2d 316 (2d Dept. 2000) ("The parties agreed to submit their controversy to a religious arbitration tribunal known as a Beth Din which adjudicates disputes according to Jewish law and custom."). It should be undeniable that Plaintiff went to a specific Beis Din -- the Bais Havaad -- because the parties agreed to have their dispute resolved according to Jewish law.

---

[7] Available at https://bethdin.org/wp-content/uploads/2019/07/Jewish-Law-Civil-Procedure-A-Comparative-Study-by-Rabbi-Yona-Reiss.pdf

[8] "'Zabla' is the pronunciation of an acronym for the Hebrew words 'Ze Borer Lo Echad' (substituting capital 'E' for the letter 'aleph' with its diacritical mark, signifying the sound of an 'e'); the phrase roughly translates as 'each picks his one.'" *Zeiler v. Deitsch*, 500 F. 3d 157, 161 n.1 (2007).

[9] Available at https://bethdin.org/zabla-panels-and-courts/#easy-footnote-bottom-3-8984. It bears noting that courts enforce arbitration agreements even when there is no general process for selecting an arbitration mechanism or setting. *See Flanzman v. Jenny Craig, Inc.*, 244 N.J. 119 (2020).

As the evidence shows, Plaintiff obtained a *Hazmana* (equivalent of the summons) from the rabbinical court on February 1, 2021, February 11, 2021, and March 1, 2021 (exhibits available at ECF No. 13-2). Defendant responded and a rabbi was appointed to preside over the dispute -- Rabbi Dovid Housman.

Defendants objected to having this specific Beis Din adjudicate the dispute. There could be a number of reasons for such an objection, but one obvious one is that Defendants did not want to give up their right to select their own arbitrator. Under the specific agreement to have this specific Beis Din administer the arbitration, the panel of "three arbitrators…[is] selected by Bais Havaad Rabbinical court." ECF No. 13-3 at 2. This procedure alone, as opposed to having each party select an arbitrator from a list and then the two arbitrators select a third arbitrator, is sufficient basis for any person to reasonably object.

Regardless, it is a well-established right in Jewish law that defendants in a beis din may object to a specific organization without compromising the right to keep the matter out of secular courts. Defendants simply exercised this right and did not sign that specific agreement with the Bais Havaad. There is nothing about exercising such a right that can be taken as a rejection of arbitration as a whole, much less the inference that there was not a meeting of the minds months earlier to have an agreement to proceed before a Beth Din. The fact that there was an enforceable agreement is amply demonstrated by the parties' conduct as well as Rabbi Dovid Housman's responses and questions.[10]

---

[10] Moreover, it is uniformly understood with the Orthodox community, and by the Defendants here, that after obtaining a *Hazmana* from a specific Beis Din, Plaintiff needed a *heter arkaos* to proceed in secular court -- *i.e.*, a release from Bais Havaad. No reasonable person who understands Jewish law and customs would believe that Defendants rejected the Beis Din process by not signing the arbitration agreement with a specific Beis Din (*i.e.*, Bais Havaad). Rabbi Housman certainty did not believe that Defendants were rejecting arbitration and would not issue a heter arkaos since it is the Plaintiff -- not Defendants -- that is refusing to follow the procedures for the selection of an arbitration panel (*i.e.*, a Zabla). To the extent there are questions, Defendants again

5

On April 22, 2021, Rabbi Dovid Housman proceeded under the procedural rules accepted by Batei Din across the world by offering a Zabla. ECF No. 13-4 at 2. Indeed, the rabbi only made such an offer after Defendants put forward two alternative batei din which Plaintiff rejected. Plaintiff then responded to the Jewish leader and person assigned to preside by the Beis Din with a curt, "No." *Id.*

At some point, perhaps before April 22, 2021, when Plaintiff refused the Zabla Beis Din, Plaintiff obtained counsel who elected to sue in state court less than two months later on June 11, 2021. *See* ECF No. 1-1 at 3-11. The complaint in state court includes a demand for "attorney's fees and costs" with a verification signed not by Plaintiff but by Plaintiff's counsel. *Id.* at 12.

Defendants now argue that there was never an agreement to proceed under the Beis Din system but this is frankly an absurd argument. Even if there was no written agreement to arbitrate in this case (formed by the summons and emails), the fact is that where one party demands arbitration, and the other party accepts the demand, an oral agreement to arbitrate may be formed. *See Corbetta Constr. Co. v Driscoll Co.*, 17 A.D.2d 176, 179 (1962). Such oral agreements are referred to as "common-law arbitration" agreements. *See Polednak v Country-Wide Ins. Co.*, 153 A.D.2d 930, 931 (1989); *Kozlowski v. Seville Syndicate, Inc.*, 54 Misc.2d 109, 314 N.Y.S.2d 439 (N.Y. Co. 1970) (holding that common law arbitration survived enactment of state arbitration statute); *Matter of Hellman [Wolbrom]*, 31 A.D.2d 477, 481 (1969).

Here, it is undisputed that Plaintiff sought to proceed to arbitration (thus, the summons to the Bais Havaad), and Defendants accepted that invitation (thus, the response and appearance before the Bais Havaad). This alone forms an oral agreement to arbitrate that is enforceable. *See*

---

request an evidentiary hearing to present experts on Beis Dein to prove the widespread understanding that once a party starts a particular Beis Din, they cannot refuse a Zabla Beis Din and proceed to secular court.

*Tal Tours [1996], Inc. v Goldstein*, 34 A.D.3d 786 (2006). "The recipient of a hazmana is not obligated to go to the beth din chosen by the claimant, although he or she is obligated to either settle the case or go to a beth din." Beth Din of America, *A Layman's Guide to Dinei Toah (Beth Din Arbitration Proceedings)*.[11] This Court should compel Plaintiff to appear before the Bais Havaad and abide by the procedures of beis din including the selection of a *Zabla Beis Din*.

Indeed, it is well-established that parties may enter into a binding contract orally, and the intention to commit an agreement to writing, standing alone, will not prevent contract formation. *See Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir.1985) (applying New York law). For example, a "voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record is enforceable even if the agreement is never reduced to writing, signed, or filed." *Role v. Eureka Lodge No. 434, I.A. of M & A.W. AFL-CIO*, 402 F.3d 314, 318 (2d Cir. 2005) (per curiam). This agreement remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to writing. *See Millgard Corp. v. White Oak Corp.*, 224 F. Supp. 2d 425, 432 (D. Conn. 2002).

As contracts, agreements to arbitrate are the same as other contracts and must be treated the same. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011 ("courts must place arbitration agreements on an equal footing with other contracts"). Just as specific terms of a settlement can be reduced to writing at a later date, so too can specific terms of an arbitration.

The level of formality being demanded by Plaintiff's counsel is antithetical Orthodox Judaism and threatens the manner in which two people practicing the same religion reach an agreement to resolve their disputes including the particular forum (*i.e.*, arbitrators). Indeed, one purpose of the initial beit din is to ensure that everything is done according to Jewish law and is

---

[11] Available at http://bethdin.org/wp-content/uploads/2015/07/LaymansGuide.pdf

thus valid. This includes the selection of the specific beth din (which then selects the *dayanim*) or, if need be, *Zabla Beit Din.*

## II. CONCLUSION

Plaintiff and Defendants agree to a form of dispute resolution practice in Orthodox Judaism for hundreds, if not thousands, of years. Such an agreement is easily ascertainable. "The Beth Din, or Beit Din, is the Rabbinical Court that has been the basis of Jewish law and living throughout history and around the globe. Procedures and decisions based on the Torah, Talmud, and the great body of Halachic law are the guarantee of continued Jewish communal life." West Coast Rabbinical Court, http://www.beth-din.org. The Beis Din provides a method of selecting an arbitration panel that Plaintiff -- not Defendants -- is attempting to reject.

To the extent that there remains a material issue of fact, Defendants respectfully request an evidentiary hearing for the court to determine the intention of the parties on this issue so that the court may examine the totality of the circumstances before having the Defendants proceed before a secular court after having appeared before a specific beis din.

Dated: New York, NY
      October 27, 2021

                                      Respectfully submitted,

                                      /s/ Bryce Jones
                                      T. Bryce Jones, Esq.
                                      1270 Ave of the Americas, 7th Fl
                                      New York, NY 10020
                                      (212) 258-0685
                                      bryce@joneslawnyc.com
                                      *Attorneys for Defendants*