**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

ELLIOT SIEGAL,

*Plaintiff,*

—against—

YAAKOV MILSTEIN, AVROHOM Y. SOROTZKIN
and J SYNERGY GREEN, INC.,

*Defendants.*

---

J SYNERGY GREEN, INC.

*Counterclaim Plaintiff,*

—against—

ELLIOT SIEGAL,

*Counterclaim Defendant.*

---

J SYNERGY GREEN, INC.

*Third-Party Plaintiff*

—against—

EMES SOLAR INC.,

*Third-Party Defendant.*

No. 21 Civ. 04032 (JS) (SIL)

**JURY DEMAND**

---

### AMENDED ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIMS
### BY DEFENDANT J SYNERGY GREEN, INC.

Defendant Yaakov Milstein ("Milstein"), Avrohom Y. Sorotzkin ("Sorotzkin"), and J

Synergy Green Inc. ("J Synergy") (hereinafter "Defendants"), by and through their attorneys,

Jones Law Firm, P.C., as and for their Amended Answer to the Amended Complaint filed by

1

Plaintiff Elliot Siegel ("Siegel") (hereinafter "Plaintiff") and against third-party Defendant Emes Solar Inc. ("Emes Solar"), hereby demand a jury on all issues so triable and respond as follows:

## NATURE OF THE ACTION

1.      Paragraph 1 is a description of the complaint to which no response is required. To the extent a response is required, Defendants deny paragraph 1.

2.      Paragraph 2 is a further description of the complaint, mentioning some of the claims and relief sought to which no response is required. To the extent a response is required, Defendants deny paragraph 2.

## THE PARTIES

3.      Deny information or knowledge sufficient to form a belief about the allegations in paragraph 3.

4.      Admit Defendant Yaakov Milstein is an adult individual residing in the State of New York.

5.      Admit Defendant Avrohom Y. Sorotzkin is an adult individual residing in the State of New York.

6.      Admit Defendant J Synergy Green Inc. is and was a domestic business corporation authorized to and doing business in the State of New York as it was formed under the laws of New York on February 1, 2012.

7.      Admit Defendants Milstein and Sorotzkin own shares in J Synergy Green Inc. but lack information to form a belief at this time as to whether they "operate" the corporation but admit that the corporation's officers direct, control, and coordinate the corporation's activities in the state of New York so that the state of New York is the corporation's principal place of business and the corporation is a citizen of New York.

8.  Deny information or knowledge sufficient to form a belief as to whether J Synergy performs "environmental services" but otherwise admit it performs solar system installations, and otherwise deny paragraph 8 to the extent that it implies this is the only function that the corporation performs.

9.  Admit paragraph 9.

10.  Deny information or knowledge sufficient to form a belief about the allegations in paragraph 10.

11.  Deny information or knowledge sufficient to form a belief about the allegations in paragraph 11.

12.  Deny that Defendants Milstein and Sorotzkin own the corporation as they only own shares in the corporation and otherwise lack information or knowledge sufficient to form a belief about the allegations in paragraph 12.

13.  Deny information or knowledge sufficient to form a belief about the allegations in paragraph 13.

14.  Paragraph 14 is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny paragraph 14.

## JURISDICTION AND VENUE

15.  Deny information or knowledge sufficient to form a belief about the allegations in paragraph 15.

16.  Admit that venue is proper in this District.

## FACTS

17.  Admit that Defendants Milstein and Sorotzkin own shares in J Synergy, but otherwise lack information or knowledge sufficient to form a belief about the allegations in

paragraph 17.

18.     Deny the allegations in paragraph 18.

19.     Admit that J Synergy had an agreement with Plaintiff under which Plaintiff was an outside salesperson, but otherwise lack information or knowledge sufficient to form a belief about the allegations in paragraph 19.

20.     Deny information or knowledge sufficient to form a belief about the allegations in paragraph 20.

21.     Paragraph 21 is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 21.

22.     Deny the allegations in paragraph 22.

23.     Deny the allegations in paragraph 23.

24.     Deny the allegations in paragraph 24.

25.     Deny the allegations in paragraph 25.

26.     Deny the allegations in paragraph 26.

27.     Deny information or knowledge sufficient to form a belief about the allegations in paragraph 27. Defendants further state that the phrase "many clients" is ambiguous and for this reason cannot be answered.

28.     Deny information or knowledge sufficient to form a belief about the allegations in paragraph 28.

29.     Deny the allegations in paragraph 29.

30.     Deny information or knowledge sufficient to form a belief about the allegations in paragraph 30.

31.      Paragraph 31 contains a legal conclusion to which no response is required. To the

extent a response is required, Defendants deny the allegations in paragraph 31.

32.     Deny the allegations in paragraph 32.

33.     Deny information or knowledge sufficient to form a belief about the allegations in paragraph 33.

34.     Paragraph 34 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 34.

35.     Paragraph 35 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 35.

36.     Deny information or knowledge sufficient to form a belief about the allegations in paragraph 36.

37.     Paragraph 37 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 37.

38.     Paragraph 38 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 38.

39.     Paragraph 39 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 39.

40.     Paragraph 40 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 40.

41.     Paragraph 41 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 41.

42.     Paragraph 42 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 42.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS
### (New York Labor Law – Failure to Pay Compensation)

43.     Defendants repeat, reallege, and reiterate each and every response set forth in paragraphs 1 through 42 as if set forth in full herein.

44.     Admit that J Synergy had an agreement with Plaintiff under which Plaintiff was an outside salesperson, but otherwise deny the allegations in paragraph 44.

45.     Deny information or knowledge sufficient to form a belief about the allegations in paragraph 45.

46.     Paragraph 46 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 46.

47.     Deny information or knowledge sufficient to form a belief about the allegations in paragraph 47.

48.     Deny information or knowledge sufficient to form a belief about the allegations in paragraph 48.

49.     Paragraph 49 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 49.

50.     Paragraph 50 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 50.

51.     Paragraph 51 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 51.

52.     Paragraph 52 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 52.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS
### (New York Labor Law – Failure to Pay Commissions)

53.     Defendants repeat, reallege, and reiterate each and every response set forth in

paragraphs 1 through 52 above as if set forth in full herein.

54.    Admit that J Synergy had an agreement with Plaintiff under which Plaintiff was an outside salesperson, but otherwise deny the allegations in paragraph 54.

55.    Paragraph 55 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 55.

56.    Deny information or knowledge sufficient to form a belief about the allegations in paragraph 56.

57.    Paragraph 57 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 57.

58.    Paragraph 58 is an excerpt from New York Labor Law to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 58.

59.    Paragraph 59 is an excerpt from New York Labor Law to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 59.

60.    Paragraph 60 is an excerpt from New York Labor Law to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 60.

61.    Paragraph 61 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 61.

62.    Paragraph 62 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 62.

63.    Paragraph 63 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 63.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS
**(New York Labor Law – Minimum Wage)**

64.    Defendants repeat, reallege, and reiterate each and every response set forth in

paragraphs 1 through 63 above as if set forth in full herein.

65.      Paragraph 65 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 65.

66.      Paragraph 66 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 66.

67.      Paragraph 67 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 67.

68.      Paragraph 68 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 68.

<u>**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS**</u>
**(Fair Labor Standards Act – Overtime)**

69.      Defendants repeat, reallege, and reiterate each and every response set forth in paragraphs 1 through 68 above as if set forth in full herein.

70.      Paragraph 70 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 70.

71.      Paragraph 71 is a description of the Fair Labor Standards Act to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 71.

72.      Paragraph 72 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 72.

73.      Paragraph 73 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 73.

74.      Paragraph 74 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 74.

75.      Paragraph 75 contains a legal conclusion to which no response is required. To the

extent a response is required, Defendants deny the allegations in paragraph 75.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
### (New York Labor Law – Overtime)

76. Defendants repeat, reallege, and reiterate each and every response set forth in paragraphs 1 through 75 above as if set forth in full herein.

77. Paragraph 77 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 77.

78. Paragraph 78 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 78.

79. Paragraph 79 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 79.

80. Paragraph 80 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 80.

### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS
### (New York Labor Law – Wage Theft Prevention Act)

81. Defendants repeat, reallege, and reiterate each and every response set forth in paragraphs 1 through 80 above as if set forth in full herein.

82. Paragraph 82 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 82.

83. Paragraph 83 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 83.

84. Paragraph 84 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 84.

85. Paragraph 85 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 85.

86.     Paragraph 86 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 86.

## AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Breach of Contract)

87.     Defendants repeat, reallege, and reiterate each and every response set forth in paragraphs 1 through 86 above as if set forth in full herein.

88.     Defendants deny knowledge and information sufficient to form a belief about the allegation in paragraph 88, which further contains a legal conclusion. Therefore, no response is required to the allegation in paragraph 88. To the extent that a response is required, Defendants deny the allegations in paragraph 88.

89.     Paragraph 89 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 89.

90.     Paragraph 90 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 90.

91.     Paragraph 91 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 91.

## AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Breach of Duty of Good Faith and Fair Dealing)

92.     Defendants repeat, reallege, and reiterate each and every response set forth in paragraphs 1 through 91 above as if set forth in full herein.

93.     Paragraph 93 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 93.

94.     Paragraph 94 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 94.

95.     Paragraph 95 contains an allusion to "New York Law" to which no response is

required. To the extent a response is required, Defendants deny the allegations in paragraph 95.

96. Paragraph 96 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 96.

97. Paragraph 97 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 97.

98. Paragraph 98 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 98.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Unjust Enrichment)

99. Defendants repeat, reallege, and reiterate each and every response set forth in paragraphs 1 through 98 above as if set forth in full herein.

100. Admit that J Synergy had an agreement with Plaintiff under which Plaintiff was an outside salesperson, but otherwise deny the allegations in paragraph 100.

101. Paragraph 101 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny paragraph 101.

102. Deny information or knowledge sufficient to form a belief about the allegations in paragraph 102. Defendants further state that the description "substantial" is ambiguous and for this reason cannot be answered.

103. Paragraph 103 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 103.

104. Deny information or knowledge sufficient to form a belief about the allegations in paragraph 104.

105. Paragraph 105 contains a legal conclusion to which no response is required and further contains an allegation to which Defendants lack knowledge or information sufficient to

form a belief. To the extent a response is required, Defendants deny paragraph 105.

106. Paragraph 106 contains a legal conclusion to which no response is required and further contains an allegation to which Defendants lack knowledge or information sufficient to form a belief. To the extent a response is required, Defendants deny paragraph 106.

107. Paragraph 107 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 107.

108. Deny information or knowledge sufficient to form a belief about the allegations in paragraph 108.

109. Deny information or knowledge sufficient to form a belief about the allegations in paragraph 109.

110. Paragraph 110 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 110.

## AS AND FOR A TENTH CAUSE OF ACTION
### (Quantum Meruit)

111. Defendants repeat, reallege, and reiterate each and every response set forth in paragraphs 1 through 110 above as if set forth in full herein.

112. Admit that J Synergy had an agreement with Plaintiff under which Plaintiff was an outside salesperson. However, Defendants lack knowledge and information sufficient to form a belief about the specific requests made to Defendants, so no response is required. To the extent that a response is required, Defendants deny the remainder of the allegations in paragraph 112.

113. Deny information or knowledge sufficient to form a belief about the allegations in paragraph 113.

114. Deny information or knowledge sufficient to form a belief about the allegations in paragraph 114.

115.     Deny information or knowledge sufficient to form a belief about the allegations in paragraph 115.

116.     Deny information or knowledge sufficient to form a belief about the allegations in paragraph 116.

117.     Paragraph 117 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 117.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION**
**AGAINST DEFENDANT YAAKOV MILSTEIN**
**(Alter Ego)**

118.     Defendants repeat, reallege, and reiterate each and every response set forth in paragraphs 1 through 118 above as if set forth in full herein.

119.     Defendants admit that Milstein presently owns shares in J Synergy, but deny information or knowledge sufficient to form a belief about the remainder of the allegations in paragraph 119.

120.     Defendants deny the allegations in paragraph 120.

121.     Defendants deny the allegations in paragraph 121.

122.     Defendants deny the allegations in paragraph 122.

123.     Defendants deny the allegations in paragraph 123.

124.     Paragraph 124 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 124.

125.     Paragraph 125 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 125.

126.     Paragraph 126 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 126.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION**
**AGAINST DEFENDANT AVROHOM Y. SOROTZKIN**
**(Alter Ego)**

127.     Defendants repeat, reallege, and reiterate each and every response set forth in paragraphs 1 through 126 above as if set forth in full herein.

128.     Defendants admit that Sorotzkin presently owns shares in J Synergy, but deny information or knowledge sufficient to form a belief about the remainder of the allegations in paragraph 128.

129.     Defendants deny the allegations in paragraph 129.

130.     Defendants deny the allegations in paragraph 130.

131.     Defendants deny the allegations in paragraph 131.

132.     Defendants deny the allegations in paragraph 132.

133.     Paragraph 133 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny paragraph 133.

134.     Paragraph 134 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny paragraph 134.

135.     Paragraph 135 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny paragraph 135.

As for Plaintiff's "Prayer for Relief," it contains legal conclusions to which no responses are required. To the extent that responses are required, Defendants deny the allegations therein and that Plaintiffs are entitled to the listed relief. Defendants further demand a jury on all issues so triable.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE
**(Unclean Hands)**

136. Defendants repeat and reallege all prior responses and allegations as though fully set forth at length herein.

137. All of Plaintiff's claims are barred by the doctrine of unclean hands as Plaintiff has committed a wrongdoing, and this lawsuit is attempting to benefit from its wrongdoing.

### SECOND DEFENSE
**(Unconscionability)**

138. Defendants repeat and reallege all prior responses and allegations as though fully set forth at length herein.

139. Plaintiff's claims are barred, in whole or in part, by the doctrine of unconscionability.

### THIRD DEFENSE
**(Failure To Mitigate)**

140. Defendants repeat and reallege all prior responses and allegations as though fully set forth at length herein.

141. Plaintiff's claims are barred, in whole or in part, for its failure to mitigate its alleged damages.

### FOURTH DEFENSE
**(Offset)**

142. Defendants repeat and reallege all prior responses and allegations as though fully set forth at length herein.

143. Defendants provided goods, services, and money to Plaintiff at a combined value at or above the amount owed to Plaintiff, if any.

## FIFTH DEFENSE
### (Bad Faith)

144.     Defendants repeat and reallege all prior responses and allegations as though fully set forth at length herein.

145.     Plaintiff did not perform any contract in good faith.

## SIXTH DEFENSE
### (Breach of Duty of Loyalty)

146.     Defendants repeat and reallege all prior responses and allegations as though fully set forth at length herein.

147.     Plaintiff breached his duty of loyalty and caused Defendants damages in an amount equal to or greater than Plaintiff's own claims.

## SEVENTH DEFENSE
### (Theft of Trade Secrets)

148.     Defendants repeat and reallege all prior responses and allegations as though fully set forth at length herein.

149.     Plaintiff stole trade secrets from Defendants, causing Defendants damages in an amount equal to or greater than Plaintiff's own claims.

## EIGHTH DEFENSE
### (Breach of Agreement to Arbitrate)

150.     Defendants repeat and reallege all prior responses and allegations as though fully set forth at length herein.

151.     Plaintiff and Defendants had a binding written agreement to arbitrate under Jewish Law before Jewish arbitrators in a "Beis Din."

152.     On or about February 1, 2022, Plaintiff Elliot Siegel had a written invitation to appear before the Bais Havaad (a specific arbitral organization) issued and served on Defendants.

153.    On or about February 10, 2022, Elliot Siegel made the following offer in writing to Appellants in a text message: "Hi, do you want to settle things or do you want to handle things in beis din? You said you would get back to me last week but you never did." R. at 13 (text message dated February 10, 2021).

154.    Elliot Siegel subsequently proceeded to have two (2) additional written invitations to appear before the Bais Havaad sent to Defendants from a Rabbi at the Bais Havaad.

155.    Defendants accepted the written invitation to arbitrate under Jewish Law under what is known as a "Beis Dein" when they appeared before the Bais Havaad.

156.    The written invitation from the Bais Havaad was the offer; the appearance of Appellants before the Rabbi was the acceptance; the agreement to give up litigation and arbitrate was the consideration.

157.    The procedures of the Bais Havaad (that the parties agreed to when Defendants accepted the written invitation and appeared before the Rabbi in the Bais Havaad) give the respondents (*i.e.*, Defendants in this case) the right to object to having specific arbitrators from the Bais Havaad preside over the arbitration even if it is administering the arbitration. When a respondent objects, the parties either agree upon a sitting Beis Din or, under the rules of the Bais Havaad, the arbitration proceeds to "Zabla" where each party selects an arbitrator and the arbitrator selects a third one.

158.    Zabla is particularly important to the Bais Havaad because it ensures the participants of a fair process without which they may refuse to participate.

159.    When Defendants accepted the written invitation to appear before Bais Havaad, they agreed to arbitrate in "beis din" and resolve their dispute under Jewish law using the procedures of the Bais Havaad.

160. When the Defendants accepted the invitation from the Bais Havaad, they agreed to the specific method for appointment of the rabbinical panel under the arbitral rules of the Bais Havaad.

161. This action is barred because the parties had an agreement to arbitrate, and Plaintiff should be compelled to arbitration as administered by the Bais Havaad under the procedures of the Bais Havaad which include arbitrating by Zabla (a three-person ad hoc arbitration panel) if the parties do not agree on a sitting Beis Din to preside over the arbitration and render a decision.

### NINTH DEFENSE
**(Failed to State a Cause of Action)**

162. Defendants repeat and reallege all prior responses and allegations as though fully set forth at length herein.

163. New York law does not recognize an alter ego claim or cause of action.

## CLAIMS BY J SYNERGY AGAINST ELLIOT SIEGEL AND EMES SOLAR INC.

1.      Yaakov Milstein ("Milstein") and Avrohom Sorotzkin ("Sorotzkin") co-founded "J Synergy Green" in 2010 and subsequently formed the corporation, J Synergy Green, Inc. (referred to as "J Synergy" in this filing), under the laws of New York on February 1, 2012.

2.      Prior to contacting potential customers, J Synergy compiled a list of potential customers through extraordinary effort including analyzing various financial profiles and potential energy savings that they could provide to those individual people.

3.      J Synergy conducted comprehensive energy surveys of each individual customer to obtain a complete understanding of that customer's systems (such as their heating, cooling, and lighting systems), their appliances, and air flow in their home.

4.      J Synergy also obtained confidential tax information or financial profiles from each customer so that it could minimize the customer's out-of-pocket payments by using federal, state, and local utility funding that J Synergy had access to and spent significant resources on understanding, in order to provide individualized solutions to customers with their information.

5.      Using this individualized information, J Synergy sought to provide each customer with $3,000 to $12,000 in grants and subsidies as well as subsidized low interest loans up to $25,000 from specific banks that J Synergy had relationships with after expending significant effort.

6.      Using this individualized information, J Synergy worked to obtain approval for the client from the New York State Energy Research and Development Authority ("NYSERDA"), which oversees the System Benefits Charge ("SBC"), also known as the Energy Efficiency and Renewability charge, across the state. The SBC is a small .003 charge, or levy, on every energy bill, that is then used to subsidize energy efficiency programs through various initiatives.

7.     Using this individual information, J Synergy also worked to obtain funding, or other discounts, from the Long Island Power Authority ("LIPA") on Long Island and parts of Queens, or through programs created by LIPA.

8.     Once the funding, approval, and discounts were obtained or determined, J Synergy oversaw various projects to each customer's residence or commercial project.

9.     For example, J Synergy could oversee the updating of a crawl space in a customer's attic, insulate the home for extreme heat or cold, seal the home's envelope, obtain and use a new, efficient boiler that runs on natural gas, and improve the distribution of air in a residence, thus creating a healthy air flow.

10.    The information that J Synergy compiled on state and local programs, tax incentives, the lending requirements for favorable banks, and tax profiles of potential customers gave J Synergy an opportunity to obtain an advantage over competitors who did not know this information or use it particularly in the manner that J Synergy had combined or otherwise used it.

11.    The information compiled by J Synergy was not readily ascertainable to the public due to its private nature and was obtained by J Synergy through over a decade of service to the community, expenditure of money on marketing, word of mouth from satisfied clients, as well as other means requiring significant effort.

12.    This information was accessible only by certain employees or other people associated with J Synergy with the proper credentials and was kept secret through password protected protocols.

13.    On or about June 2019, J Synergy reached an agreement with Elliot Siegel (hereinafter, "Siegel") under which Siegel was an outside salesperson of J Synergy's services.

14.    Siegel received specialized training from J Synergy.

15. Prior to being hired as an outside salesperson, Siegel had no background in this industry, only "extensive experience with many financial products from plain vanilla loans to asset backed securities and derivatives." https://emessolar.com/work/about (last checked April 15, 2022).

16. J Synergy provided Siegel with access to J Synergy's list of clients and potential clients in this role as an outside salesperson, as well as other proprietary and confidential information.

17. J Synergy provided Siegel with specialized demographic information and other information for use as an outside salesperson.

18. Siegel gained knowledge of J Synergy's structure, operations, and procedures, including, but not limited to, those based on the information compiled to give J Synergy an advantage over competitors.

19. Siegel had a duty as an outside salesperson to keep confidential all of J Synergy's trade secrets (*e.g.*, client lists and business procedures).

20. Siegel had a duty not to form a competing company while working for J Synergy.

21. Siegel had a duty not to use J Synergy's trade secrets including client lists and business procedures.

22. Siegel's misappropriation of and use of these trade secrets, including the compilation of information used in J Synergy's business, gave Siegel an unfair advantage when he formed a new company four months before leaving J Synergy.

23. In particular, on or about December 2020, Siegel ended his work with J Synergy as an outside salesperson.

24. In August 2020, four months before ending his work with J Synergy as an outside

salesperson, Elliot Siegel started a competing business, Emes Solar, Inc. ("Emes Solar") with Marc Schmerler ("Schmerler").

25.     Third-party Defendant, Emes Solar, is a corporation formed under the laws of New York on August 18, 2020.

26.     The website for Emes Solar (https://emessolar.com/work/about/) (last checked April 15, 2022) states that its owners are Elliot Siegel and Marc Schmerler. https://web.archive.org/web/20220415141354/https://emessolar.com/work/about/

27.     Siegel kept defendants "in the dark" and did not inform them that he was starting a competing business while still working with J Synergy.

28.     Siegel made improper use of time that was to be devoted to his work with J Synergy, as well as J Synergy's facilities, and its trade secrets in starting the new competing business when still working with J Synergy.

29.     Siegel co-founded Emes Solar with Marc Schmerler, who is currently a respondent in an arbitration initiated by J Synergy against him.

30.     Marc Schmerler had a non-compete and non-solicitation agreement with J Synergy.

31.     In addition, the agreement with Schmerler and J Synergy required Schmerler to "acknowledge that, as a result of your employment with the Company, you will be in possession of proprietary and confidential information relating to the business of the Company and its affiliates. You covenant and agree that you will not, at any time during or after your employment with the Company, directly or indirectly, disclose to any person, firm, corporation or other entity, such proprietary and confidential information (which includes, without limitation, information acquired by you during your employment with the Company regarding the operations, business dealings, proprietary products and tools, clients, customers or business practices of the Company

or its affiliates) without the Company's prior written consent. You also agree to return any documents and material you obtained as a result of your employment with the Company, upon request and immediately upon the termination of your employment."

32.     Schmerler's agreement also requires: "At the conclusion of your employment with the Company, for any reason, you shall return and deliver to the Company any and all computers, hard-drives, papers, books, records, customer and prospect information, documents, memoranda, manuals, e-mail, electronic or magnetic recordings or data, including all copies or summaries thereof…and any other property belong to the Company or any affiliate…as well as any other Company property in your possession or control. If at any time after termination of your employment with the Company, for any reason, you determine that you have any Company documents or information, you shall immediately return to the Company all such documents or information in your possession or control, including all copies and portions thereof."

33.     Siegel and agents of Emes Solar have contacted clients on the client lists obtained from J Synergy thereby establishing business relationships using the trade secrets obtained from J Synergy.

34.     J Synergy suffered damages as a result of the above alleged conduct.

**<u>AS AND FOR A FIRST CLAIM BY J SYNERGY</u>**
**(Misappropriation and Unfair Competition against Emes Solar and Siegel)**

35.     J Synergy repeats, reiterates and reaffirms each and every allegation contained above, with the same force and effect as if realleged herein.

36.     Emes Solar and Siegel have wrongfully diverted the J Synergy's business to itself by misappropriating information that required extraordinary effort to compile and was afforded trade secret protection under New York law.

37.     Emes Solar and Siegel are using the information compiled by J Synergy in breach

of the confidence given to Siegel by J Synergy, as a result of hiring him as an outside salesperson.

38.     In addition, Emes Solar and Siegel are using the information compiled by J Synergy in breach of the agreement with Schmerler, the co-owner and co-founder of Emes Solar.

39.     J Synergy suffered damages as a result.

## AS AND FOR A SECOND CLAIM BY J SYNERGY
### (Conversion against Emes Solar and Siegel)

40.     J Synergy repeats, reiterates and reaffirms each and every allegation contained above, with the same force and effect as if realleged herein.

41.     Emes Solar and Siegel have, and are, intentionally and without authority, assumed or exercised control over property belonging to J Synergy, interfering with its right of possession.

42.     The property includes information compiled by J Synergy, with extraordinary effort, that constitutes a trade secret including electronic documents stored and printed versions of the documents.

43.     J Synergy had superior right of possession to the private, password-secured information that Emes Solar and Siegel allegedly took possession of, and that Emes Solar and Siegel improperly obtained or otherwise stole from J Synergy.

44.     J Synergy suffered damages as a result.

## AS AND FOR A THIRD CLAIM BY J SYNERGY
### (Tortious Interference with Contract against Emes Solar and Siegel)

45.     J Synergy repeats, reiterates and reaffirms each and every allegation contained above, with the same force and effect as if realleged herein.

46.     J Synergy had contracts with third parties – *i.e.*, customers of J Synergy.

47.     Siegel knew about the contracts with the customers at the time of his interference with the contracts

48.     Siegel interfered intentionally with the contracts and the interference was improper.

49.     Siegel's conduct led to breach of contracts by the third parties.

50.     J Synergy suffered damages as a result.

## AS AND FOR A FOURTH CLAIM BY J SYNERGY
### (Tortious Interference with Contract against Emes Solar and Siegel)

51.     J Synergy repeats, reiterates and reaffirms each and every allegation contained above, with the same force and effect as if realleged herein.

52.     J Synergy had a contract with Marc Schmerler.

53.     Siegel knew about the contract with Marc Schmerler at the time of his interference with the contract.

54.     Once formed in August 2020, Emes Solar knew about the contract at the time of its interference with the contract.

55.     Emes Solar and Siegel interfered intentionally with the contract and the interference was improper.

56.     Emes Solar and Siegel's conduct led to Schmerler's breach of the contract with J Synergy.

57.     J Synergy suffered damages as a result.

## AS AND FOR A FIFTH CLAIM BY J SYNERGY
### (Tortious Interference with Prospective Economic Advantage against Emes Solar and Siegal)

58.     J Synergy repeats, reiterates and reaffirms each and every allegation contained above, with the same force and effect as if realleged herein.

59.     J Synergy had a business relationship or expected to establish one with third parties – i.e., customers or potential customers of J Synergy.

60.     The relationship, or expected transaction, was reasonably likely to benefit J Synergy financially.

61.     Emes Solar and Siegel knew about the relationship and intentionally interfered with the relationship.

62.     The interference by Emes Solar and Siegel was improper.

63.     Siegel's conduct caused the third parties to disrupt or terminate the relationship.

64.     J Synergy suffered damages as a result.

**AS AND FOR A SIXTH CLAIM BY J SYNERGY**
**(Unjust Enrichment against Emes Solar and Siegal)**

65.     J Synergy repeats, reiterates and reaffirms each and every allegation contained above, with the same force and effect as if realleged herein.

66.     Emes Solar and Siegel have received benefits at J Synergy's expense and under circumstances that would make it unjust for Emes Solar and Siegel to retain the benefit without commensurate compensation to J Synergy.

**WHEREFORE**, J Synergy respectfully requests that this Court grant the following relief:

a.     A declaratory judgment that the practices complained of herein are unlawful;

b.     An injunction against Emes Solar and Siegel and their agents, successors, employees, representatives, and any and all persons acting in concert with one or both of them, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c.     A compensatory award of at least $3,000,000, with the amount to be determined by a jury at trial;

d.     Punitive damages of at least $9,000,000, with the amount to be determined by a jury at trial;

e.     An award of prejudgment and post-judgment interest;

f.     An award of costs and expenses of this action together with reasonable attorneys'

and expert fees, court costs and disbursements; and

g.        Such other, further, and different relief as this Court deems just and proper.

Dated: New York, New York
        April 15, 2022

Bryce Jones, Esq.
**Jones Law Firm, P.C.**
1270 6th Avenue, 7th Floor
New York, NY 10020
(212) 258-0685
bryce@joneslawnyc.com
*Attorneys for Defendants &*
*Counterclaim-Plaintiff*
*J Synergy Green Inc.*